## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ST. JULIAN WINE CO., INC., | ) | |
| individually and on behalf | ) | |
| of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| THE CINNCINATI INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff St. Julian Wine Company, Inc. ("Plaintiff") brings this action on behalf of itself and all others similarly situated against Defendant The Cincinnati Insurance Company ("CIC"), and states and alleges as follows:

## INTRODUCTION

1.      This action arises out of CIC's failure to provide insurance coverage for the losses sustained and expenses incurred by Plaintiff because of the ongoing coronavirus pandemic.

2.      Plaintiff owns and operates Michigan's oldest winery and distillery, with roots dating back to the Prohibition era.   The winery produces wine for sale online and at various retail locations in Michigan.   These locations have tasting rooms onsite, and one has a full-service restaurant.   The winery also hosts public

and private events at various times throughout the year. Unfortunately, Plaintiff's operations have been and continue to be disrupted by government restrictions related to the novel coronavirus, SARS-CoV-2, which causes the infectious disease COVID-19. Plaintiff is able to sell its wines online and to offer customers curbside pickup, but cannot host any live events or allow customers to taste wines in its tasting rooms or dine in at its restaurant.

3.      Plaintiff purchased insurance from CIC to protect against this sort of business interruption.   This coverage is set forth in CIC's Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form.

4.      CIC's coverage forms provide "Business Income" coverage, which promises to pay for actual loss due to the necessary suspension of operations caused by accidental physical loss or accidental physical damage to the covered property.

5.      CIC's coverage forms also provide "Extra Expense" coverage, which promises to pay the necessary expenses incurred to avoid or minimize the suspension of business and to continue operations.

6.      CIC's coverage forms provide "Business Income from Dependent Properties" coverage, which promises to pay for actual loss due to the suspension of operations caused by a direct loss to dependent property caused by or resulting from any covered cause of loss.

7.     CIC's coverage forms provide "Extra Expense from Dependent Properties" coverage, which promises to pay the necessary expenses incurred to avoid or minimize the suspension of business and to continue operations caused by a direct loss to dependent property caused by or resulting from any covered cause of loss.

8.     CIC's coverage forms also provide "Civil Authority" coverage, which promises to pay for loss caused by action of civil authority that prohibits access to the premises.

9.     CIC's coverage forms, under sections entitled "Duties in the Event of Loss," require in the event of a loss that the policyholder take all reasonable steps to protect the Covered Property from further damage, and keep a record of the expenses necessary to protect the Covered Property for consideration in the settlement of the claim.

10.    Plaintiff was forced to suspend or reduce business at its winery due to COVID-19 and the ensuing orders issued by civil authorities in Michigan mandating the suspension of business for on-site services.

11.    On information and belief, CIC has made a corporate-level business decision not to pay insureds for losses related to COVID-19 or related to orders issued by civil authorities to control the spread of the coronavirus.   In keeping with that decision, CIC has denied the claim for coverage submitted by Plaintiff herein.   This

has robbed Plaintiff of the benefit of its bargain with CIC and, absent some relief, could force the closing of retail locations and impact the existence of this century-old winery.

## THE PARTIES

11.     Plaintiff is a corporation organized, incorporated and existing under the laws of the State of Michigan, with its principal place of business in Paw Paw, Michigan. Plaintiff and operates St. Julian Winery located at 716 S Kalamazoo Street, Paw Paw, Michigan 49079.

12.     Defendant CIC is a corporation organized, incorporated and existing under the laws of the State of Ohio, with its principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014. At all times herein relevant, Cincinnati wrote insurance policies and did business in the State of Michigan.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

*The Policy Provisions at Issue*

15.     CIC issued Policy No. ETD 043 68 07 to Plaintiff, for a policy period of May 1, 2018 to May 1, 2021.  A true and correct copy of Policy No. ETD 043 68 07 is attached hereto as Exhibit A.

16.     Policy No. ETD 043 68 07 includes a Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form.

17.     The Covered Property, with respect to the Building and Personal Property Coverage Form, includes the following business locations:

a.     716 S. Kalamazoo Street, Paw Paw, MI 49079

b.     127 S. Main Street, Frankenmuth, MI 48734

c.     600 S. Gremps Street, Paw Paw, MI 49079

d.     710 S. Kalamazoo Street, Paw Paw, MI 49079

e.     700 Freedom Court, Dundee, MI 48131

f.     I-94 & Union Pier Road, Union Pier, MI 49129

g.     2100 N. Concord Road, Albion, MI 49224

h.     123 Commercial Avenue, Paw Paw, MI 49079

i.     Mountain Road & Friday Road, Coloma, MI 49038

j.     3066 Friday Road, Coloma, MI 49038

k.      4425 14 Mile Road NE, Rockford, MI 49341

l.      4413 14 Mile Road NE, Rockford, MI 49341

18.      Policy No. ETD 043 68 07 is an "all- risk" property damage policy. All-risk policies cover all risks of loss except for risks that are expressly and specifically excluded.

19.      CIC did not exclude or limit coverage for losses from viruses in Plaintiff's policy or those of the other members of the putative class. On the contrary, losses due to COVID-19 are a Covered Cause of Loss under Policy No. ETD 043 68 07 and all CIC policies with an identical Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form.

20.      In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, CIC agreed to pay for its insured's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct "loss" to property at the covered premises.

21.      "Loss" is defined to mean accidental physical loss or accidental physical damage.

22.      "Suspension" is defined to mean the slowdown or cessation of business activities and that part or all of the covered premises is rendered untenable.

23.     "Period of restoration" is defined to mean the period of time that begins at the  time of direct loss.

24.     "Business Income" is defined to mean net income (net profit or loss before  income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

25.     The presence of virus or disease can constitute physical loss of or damage to  property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting  arm—Insurance Services Office, Inc. or "ISO"—circulated a statement to state insurance  regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or  substance), or enable the spread of disease by their presence on interior building  surfaces or the surfaces of personal property. When disease-causing viral  or bacterial contamination occurs, potential claims involve the cost of replacement of  property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although  building and personal property could arguably become contaminated (often  temporarily) by such viruses and bacteria, the nature of the property itself would  have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

26.     The ISO also created a new "amendatory endorsement" to exclude loss due to  virus or bacteria from coverage afforded by certain insurance policies.

The ISO amendatory  endorsement states that there is "no coverage for loss or damage caused by or resulting from any  virus, bacterium or other microorganism that induces or is capable of inducing physical distress,  illness or disease" (the "Virus Exclusion").

27.     Some insurers added the Virus Exclusion to their policies that provide Business  Income (also referred to as "business interruption") coverage. CIC's Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, however, do  not include and are not subject to any exclusion for losses caused by viruses or communicable diseases.

28.     In the Building and Personal Property Coverage Form and Business Income (And  Extra Expense) Coverage Form, CIC also agreed to pay necessary Extra Expense that its  insureds sustain during the "period of restoration" that the insureds would not have sustained if  there had been no direct loss to property caused by or resulting from a Covered Cause of Loss.

29.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

30.     CIC also agreed to "pay for the actual loss of 'Business Income'" sustained  "and necessary Extra Expense" sustained "caused by action of civil authority that prohibits access  to" the Covered Property when a Covered Cause of Loss causes direct damage to property other  than the Covered Property, the civil

authority prohibits access to the area immediately surrounding the damaged property, and "the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage…."

31.     CIC's coverage forms, under sections titled "Duties in the Event of Loss," require in the event of a loss that the policy holder take all reasonable steps to protect the Covered Property from further damage, and keep a record of the expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This is commonly referred to as "Sue and Labor" coverage.

32.     Further, In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) from Dependent Properties Coverage Form, CIC agreed to pay for its insureds actual loss of Business Income and Extra Expense sustained due to the necessary suspension of the insured's operations during the "period of restoration" caused by direct "loss" to "dependent property" caused by or resulting from a covered cause of loss.

33.     "Dependent Property" is defined to mean property operated by others whom the insured depends on to: a) deliver materials or services to the insured or to others for the insured's account, b) accept insured's products or services, c) manufacture products for delivery to insured's customers under contract of sale, or d) attract customers to the insured's business.

34.     Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, Sue and Labor, Business Income from Dependent Properties, and Extra Expense from Dependent Properties provisions of Policy No. ETD 043 68 07.

*COVID-19 and the Covered Cause of Loss*

35.     COVID-19 is a highly contagious virus that has rapidly spread and continues to spread across the United States.

36.     COVID-19 is spread by a number of methods, including "community spread," meaning that some people have been infected and it is not known how or where they became exposed. Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

37.     The CDC has reported that a person can be become infected with COVID-19 by touching a surface or object (like a fork, plate, table, or chair) that has the virus on it, and then touching their own mouth, nose or eyes.

38.     To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces.

39.     COVID-19 has been declared a pandemic by the World Health Organization.

40.     The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize restaurants, bars and other establishments.

41.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' businesses (the "Closure Orders").

42.     On or about March 10, 2020, Michigan Governor Gretchen Whitmer issued Executive Order 2020-4, declaring a statewide state of emergency due to the spread of COVID-19. This gave Governor Whitmer the authority "to promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control."

43.     In describing the need for Executive Order 2020-4, Governor Whitmer commented that COVID-19 presented an "can easily spread from person to person, … can result in serious illness or death" and presented an "unprecedented health crisis."

44.     In the three weeks that followed issuance of Executive Order 2020-4, the coronavirus "spread across Michigan, bringing deaths in the hundreds, confirmed

cases in the thousands, and deep disruption to this state's economy, homes, and educational, civic, social, and religious institutions."

45.     Utilizing her emergency authority, Governor Whitmer issued further orders "[t]o mitigate the spread of COVID-19 and to provide essential protections to vulnerable Michiganders and this state's health care system and other critical infrastructure."

46.     Executive Order 2020-21, issued on March 23, 2020, ordered the suspension of all activities not necessary to sustain or protect life.  All persons living in the State of Michigan were ordered to stay at home or at their place of residence unless engaging in a specifically enumerated excepted activity.  Although exception existed for critical infrastructure workers traveling to or from or performing their jobs, businesses employing these workers were required to implement and maintain social distancing and mitigation measures to protect workers and customers, including:

a.     Restricting the number of workers present on premises to no more than is strictly necessary to perform the business's or operation's critical infrastructure functions.

b.     Promoting remote work to the fullest extent possible.

c.     Keeping workers and patrons who are on premises at least six feet from one another to the maximum extent possible, including for customers who are standing in line.

d.     Increasing standards of facility cleaning and disinfection to limit worker and patron exposure to COVID-19, as well as adopting protocols to clean and disinfect in the event of a positive COVID-19 case in the workplace.

e.    Adopting policies to prevent workers from entering the premises if they display respiratory symptoms or have had contact with a person who is known or suspected to have COVID-19.

f.    Any other social distancing practices and mitigation measures recommended by the Centers for Disease Control.

47.    Executive Order 2020-42, issued on or about April 9, 2020, clarified and extended the duration of the restrictions put in place by Executive Order 2020-21 through April 30, 2020.

48.    Executive Order 2020-59, issued on or about April 24, 2020, amended the scope and extended the duration of the restrictions put in place by Executive Order 2020-42 to May 15, 2020.  Among other things, it provided that any business that was allowed to remain open for in-store sales:

a.    Must establish lines to regulate entry in accordance with subsection (b) of this section, with markings for patrons to enable them to stand at least six feet apart from one another while waiting. Stores should also explore alternatives to lines, including by allowing customers to wait in their cars for a text message or phone call, to enable social distancing and to accommodate seniors and those with disabilities.

b.    Must adhere to the following restrictions:

i.    For stores of less than 50,000 square feet of customer floor space, must limit the number of people in the store (including employees) to 25% of the total occupancy limits established by the State Fire Marshal or a local fire marshal.

ii.    For stores of more than 50,000 square feet, must:

1.    Limit the number of customers in the store at one time (excluding employees) to 4 people per 1,000 square feet of customer floor space.

2.      Create at least two hours per week of dedicated shopping time for vulnerable populations, which for purposes of this order are people over 60, pregnant women, and those with chronic conditions like heart disease, diabetes, and lung disease.

iii.    The director of the Department of Health and Human Services is authorized to issue an emergency order varying the capacity limits described in this subsection as necessary to protect the public health.

c.      May continue to sell goods other than necessary supplies if the sale of such goods is in the ordinary course of business.

d.      Must consider establishing curbside pick-up to reduce in-store traffic and mitigate outdoor lines.

49.     COVID-19 and Governor Whitmer's orders in response to COVID-19 dramatically impacted Plaintiff's use of the Covered Property.

50.     Loss of use of property that has not been physically altered does constitute "physical loss or damage" for purposes of first-party property insurance.

51.     As the drafter of the policies, if CIC had wished to exclude from coverage  as "physical loss or damage" loss of use of property that has not been physically altered or  deformed, it could have used explicit language stating such a definition, but it did not do so.

52.     Governor Whitmer's orders and similar orders issued by civil authorities in other states caused direct physical loss of or damage to the Covered Property or "premises" under the Plaintiff's policy and the policies

of other members of the putative class by denying use of and/or damaging the Covered Property, and by causing a necessary suspension or curtailment of operations during a period of restoration. Governor Whitmer's orders and similar orders issued by civil authorities in other states prohibited access to the area immediately surrounding the Covered Property or "premises" under the Plaintiff's policy. Governor Whitmer's orders and similar orders issued by civil authorities in other states caused Plaintiff and other members of the putative class to lose Business Income and incur Extra Expense.

53.     Plaintiff submitted a notice of loss to CIC under its policy due to the presence of COVID-19 and Governor Whitmer's orders and CIC denied its claim.

54.     CIC denied coverage of any claim under Plaintiff's policy.

55.     On information and belief, CIC is using a form denial letter to deny coverage to all its insureds with policies similar to Plaintiff.

## CLASS ACTION ALLEGATIONS

56.     Pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, Plaintiff brings this action on its own behalf and on behalf of similarly situated individuals and entities as defined herein.

57.     Plaintiff seeks to represent nationwide classes for business income coverage defined as:

a.   All persons and entities with Business Income coverage under a property insurance policy issued by CIC that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

b.   All persons and entities that: had Business Income coverage under a property insurance policy issued by CIC; suffered a suspension of business related to COVID-19, at the premises covered by their CIC property insurance policy; made a claim under their property insurance policy issued by CIC; and were denied Business Income coverage by CIC for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

58.    Plaintiff seeks to represent nationwide classes for extra expense coverage defined as:

a.   All persons and entities with Extra Expense coverage under a property insurance policy issued by CIC that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their CIC property insurance policy (the "Extra Expense Declaratory Judgment Class").

b. All persons and entities that: had Extra Expense coverage under a property insurance policy issued by CIC; sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their CIC property insurance policy; made a claim under their property insurance policy issued by CIC; and were denied Extra Expense coverage by CIC despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

59. Plaintiff seeks to represent nationwide classes for civil authority coverage defined as:

a. All persons and entities with Civil Authority coverage under a property insurance policy issued by Cincinnati that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

b. All persons and entities that: had Civil Authority coverage under a property insurance policy issued by Cincinnati; suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; made a claim under their property insurance policy issued by Cincinnati; and were denied Civil Authority coverage by

Cincinnati for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

60.    Plaintiff seeks to represent nationwide classes for sue and labor coverage defined as:

a.    All persons and entities with a Sue and Labor provision under a property insurance policy issued by Cincinnati that sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Cincinnati property insurance policy (the "Sue and Labor Declaratory Judgment Class").

b.    All persons and entities that: had a Sue and Labor provision under a property insurance policy issued by Cincinnati; sought to prevent property damage caused by COVID-19 by suspending or reducing business operations, at the premises covered by their Cincinnati property insurance policy; made a claim under their property insurance policy issued by Cincinnati; and were denied Sue and Labor coverage by Cincinnati in connection with the suspension of business caused by COVID-19 (the "Sue and Labor Breach Class").

61.    Plaintiff seeks to represent nationwide classes for business income from dependent properties coverage defined as:

c.    All persons and entities with Business Income from Dependent Properties coverage under a property insurance policy issued by CIC that suffered a suspension of business due to COVID-19 at the premises of a dependent property (the "Business Income from Dependent Properties Declaratory Judgment Class").

d.    All persons and entities that: had Business Income from Dependent Properties coverage under a property insurance policy issued by CIC; suffered a suspension of business related to COVID-19, at the premises of a dependent property covered by their CIC property insurance policy; made a claim under their property insurance policy issued by CIC; and were denied Business Income from Dependent Properties coverage by CIC for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income from Dependent Properties Breach Class").

62.    Plaintiff seeks to represent nationwide classes for extra expense coverage from dependent properties defined as:

a.    All persons and entities with Extra Expense from Dependent Properties coverage under a property insurance policy issued by CIC that sought to minimize the suspension of business in connection with

COVID-19 at the premises of a dependent property (the "Extra Expense from Dependent Properties Declaratory Judgment Class").

b.    All persons and entities that: had Extra Expense from Dependent Properties coverage under a property insurance policy issued by CIC; sought to minimize the suspension of business in connection with COVID-19 at the premises of a dependent property; made a claim under their property insurance policy issued by CIC; and were denied Extra Expense from Dependent Properties coverage by CIC despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense from Dependent Properties Breach Class").

63.    Excluded from each defined class are CIC and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.

64.    Plaintiff reserves the right to modify or amend each of the class definitions as appropriate during the course of this litigation. In particular, Plaintiff reserves the right to seek certification of classes exclusively comprised of persons and entities located within the State of Michigan.

65.     Each putative class as defined herein is so numerous that joinder of all its members is impracticable.

66.     This action involves questions of law or fact which are common to each of the putative classes.  These common questions include but are not limited to the following:

a.      whether CIC's Business Income coverage applies to a suspension of business caused by COVID-19;

b.      whether CIC's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

c.      whether CIC's Civil Authority coverage applies to a loss of Business Income and Extra Expense sustained caused by the orders of state governors requiring the suspension of businesses as a result of COVID-19;

d.      whether CIC's Sue and Labor provision applies to require Cincinnati to pay for efforts to reduce damage caused by COVID-19;

e.      whether CIC's Business Income from Dependent Properties coverage applies to a suspension of business caused by COVID-19;

f.      whether CIC's Extra Expense from Dependent Properties coverage applies to efforts to minimize a loss cause by COVID-19;

g.   whether CIC breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss related to COVID-19 and the related closures; and

h.   whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

67.   Plaintiff's claims are typical of the claims of each of the members of the putative classes. Plaintiff and the other putative class members were similarly affected by CIC's refusal to pay under its Business Income, Extra Expense, Civil Authority, Sue and Labor, Business Income from Dependent Properties, and Extra Expense from Dependent Properties. Plaintiff's claims are based upon the same legal theories as those of the other class members. Plaintiff and the other class members sustained damages as a direct and proximate result of the same wrongful practices in which CIC engaged.

68.   Plaintiff is an adequate class representative because it is a member of each of the classes it seeks to represent. and its interests do not conflict with the interests of the other class members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the class as defined here will be fairly and adequately protected by Plaintiff and its counsel.

69.     These putative classes can be properly certified under Rule 23(b)(1) because Plaintiff seeks to define the nature and scope of CIC's Business Income, Extra Expense, Civil Authority, Sue and Labor, Business Income from Dependent Properties, and Extra Expense from Dependent Properties coverages.  The prosecution of separate actions by individual members of the classes would create an  immediate risk of inconsistent or varying adjudications that would establish incompatible  standards of conduct for CIC. Moreover, the adjudications sought by Plaintiff could, as a  practical matter, substantially impair or impede the ability of other class members, who are not  parties to this action, to protect their interests.

70.     These putative classes can be properly certified under Rule 23(b)(2) because CIC acted or refused to act on grounds generally applicable to plaintiff  the other  class  members,  thereby  making  appropriate  final  injunctive  relief  and declaratory relief as described herein.

71.     These putative classes can be properly certified under Rule 23(b)(3) because   class action is superior to any other available means for the fair and efficient  adjudication of this controversy, and no unusual difficulties are likely to be encountered in the  management of this class action. Individualized litigation creates a potential for inconsistent or  contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents fewer management difficulties and provides the  benefit of a single

adjudication, economies of scale, and comprehensive supervision by a single court. Moreover, the common issues described herein predominate over any individual issues that may exist.

## CAUSES OF ACTION

### COUNT I – Declaratory Judgment – Business Income Coverage  (Brought on behalf of the Business Income Declaratory Judgment Class)

72.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73.    Plaintiff brings this Count individually and on behalf of the other members of the  Business Income Declaratory Judgment Class.

74.    Plaintiff's CIC policy and the CIC policies of other Business Income Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory  Judgment Class members' losses for claims covered by the policy.

75.    Plaintiff and the other Business Income Declaratory Judgment Class members  have complied with all applicable provisions of the policies and yet CIC failed  and  refused  to  provide  coverage  as  the  policies  require.   Instead,  on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations, such

that the Court can render declaratory judgment regardless of whether particular members of the class have filed a claim.

76.     An actual case or controversy exists regarding Plaintiff and the other Business Income Declaratory Judgment Class members' rights and CIC's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiffs and the other Business Income Declaratory Judgment Class members in connection with the suspension and interruption of their businesses arising from the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic.

77.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.     The Business Income losses that Plaintiff and the other Business Income Declaratory Judgment Class members suffered as a result of their businesses being suspended and interrupted by the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic are insured losses under their policies; and

b.     CIC is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection

with the orders issues by civil authorities during the period of restoration and the necessary interruption of their businesses arising from the COVID-19 pandemic.

### COUNT II – Breach of Contract – Business Income Coverage (Brought on behalf of the Business Income Breach Class)

78.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

79.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

80.     Plaintiff's CIC policy and the CIC policies of other Business Income Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

81.     In the Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form, CIC agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

82.     A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which CIC agreed to pay for loss of

Business Income during the "period of restoration" that begins at the time of direct loss.

83.    "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

84.    COVID-19 caused direct physical loss of or damage to Plaintiff and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff and the other Business Income Breach Class members' CIC policies.

85.    Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the policies and yet CIC failed and refused to provide coverage as the policies require. Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations, such that the Court can render declaratory judgment regardless of whether particular members of the class have filed a claim.

86.    By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with

the COVID-19 pandemic, CIC has breached its coverage obligations under the policies.

87.    As a result of CIC's breaches of the policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which CIC is liable, in an amount to be proven at trial.

### COUNT III – Declaratory Judgment – Extra Expense Coverage (Brought on behalf of the Extra Expense Declaratory Judgment Class)

88.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

89.    Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

90.    Plaintiff's CIC policy and the CIC policies of other Extra Expense Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

91.    Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and yet CIC failed and refused to provide coverage as the policies require. Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or

investigations, such that the Court can render declaratory judgment regardless of whether particular members of the class have filed a claim.

92.     An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class members' rights and CIC's obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

93.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.     The Extra Expenses losses that Plaintiff and the other Extra Expense Declaratory Judgment Class members suffered as a result of their businesses being suspended and interrupted by the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic are insured losses under their policies; and

b.     CIC is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the orders issues by civil authorities during the period of restoration and

the necessary interruption of their businesses arising from the COVID-19 pandemic.

### COUNT IV – Breach of Contract – Extra Expense Coverage (Brought on behalf of the Extra Expense Breach Class)

94.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

95.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

96.     Plaintiff's CIC policy and the CIC policies of other Extra Expense Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense Breach Class members' losses for claims covered by the policy.

97.     In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, CIC also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have sustained if there had been no direct loss to property caused by or resulting from a Covered Cause of Loss.

98.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

99.     Due to the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property.

100.    By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic, CIC has breached its coverage obligations under the policies.

101.    As a result of CIC's breaches of the policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which CIC is liable, in an amount to be proven at trial.

### COUNT V – Declaratory Judgment – Civil Authority Coverage (Brought on behalf of the Civil Authority Declaratory Judgment Class)

102.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

103.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

104.    Plaintiff's CIC policy and the CIC policies of other Civil Authority Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

105.   Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and yet CIC failed and refused to provide coverage as the policies require.  Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations, such that the Court can render declaratory  judgment regardless of whether particular members of the class have filed a claim.

106.   An actual case or controversy exists regarding Plaintiff and the other Civil  Authority Declaratory Judgment Class members' rights and CIC's obligations under the  policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class  members for the full amount of covered Civil Authority losses incurred by Plaintiff and the  other Civil Authority Declaratory Judgment Class in connection  with the suspension and interruption of their businesses arising from the COVID-19 pandemic and  the orders issued by civil authorities responding to the pandemic.

107.   Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory  Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.      The Civil Authority losses that Plaintiff and the other Civil Authority Declaratory Judgment Class members suffered as a result of their

businesses being suspended and interrupted by the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic are insured losses under their policies; and

b.  CIC is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of the Civil Authority losses incurred and to be incurred in connection with the orders issues by civil authorities during the period of restoration and the necessary interruption of their businesses arising from the COVID-19 pandemic.

### COUNT VI – Breach of Contract – Civil Authority Coverage  (Brought on behalf of the Civil Authority Breach Class)

108.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

109.  Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

110.  Plaintiff's CIC policy and the CIC policies of other Civil Authority Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

111.    CIC agreed to "pay for the actual loss of 'Business Income'" sustained "and  necessary Extra Expense" sustained "caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes direct damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property, and "the action of civil authority is taken in response to dangerous physical  conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage…."

112.    The orders issued by civil authorities responding to the COIVD-19 pandemic triggered the Civil Authority provision under Plaintiff and  the other members of the Civil Authority Breach Class's Cincinnati insurance policies.

113.    Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and yet CIC failed and refused to provide coverage as the policies require.  Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations.

114.    By denying coverage for any business losses incurred and extra expenses sustained  by Plaintiff and other members of the Civil Authority Breach Class in connection with the  COVID-19 pandemic and the orders issued by civil

authorities responding to the pandemic, CIC has breached its coverage obligations under the policies.

115.     As a result of CIC's breaches of the policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which CIC is liable, in an amount to be proven at trial.

**COUNT VII – Declaratory Judgment – Sue and Labor
Coverage  (Brought on behalf of the Sue and Labor
Declaratory Judgment Class)**

116.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

117.     Plaintiff brings this Count individually and on behalf of the other members of the  Sue and Labor Declaratory Judgment Class.

118.     Plaintiff's CIC policy and the CIC policies of other Sue and Labor Declaratory Judgment Class members are contracts under which CIC was paid premiums  in exchange for its promise to pay Plaintiff and the other Sue and Labor Declaratory Judgment  Class members' reasonably incurred expenses to protect Covered Property.

119.     Plaintiff and the other Sue  and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and yet CIC failed and refused to provide coverage as the policies require.  Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims

related to COVID-19 without individual bases or investigations, such that the Court can render declaratory judgment regardless of whether particular members of the class have filed a claim.

120.    An actual case or controversy exists regarding Plaintiff and the other Sue and Labor Declaratory Judgment Class members' rights and CIC's obligations under the policies to reimburse Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount Plaintiff and the other members of the Sue and Labor Declaratory Judgment Class reasonably incurred to protect Covered Property from further damage by COVID-19.

121.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Sue and Labor Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    a.    Plaintiff and the other Sue and Labor Declaratory Judgment Class members reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under their policies; and

    b.    CIC is obligated to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members for the full amount of the expenses they reasonably incurred to protect Covered Property from further damage by COVID-19.

## COUNT VIII – Breach of Contract – Sue and Labor Coverage (Brought on behalf of the Sue and Labor Breach Class)

122.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

123.    Plaintiff brings this Count individually and on behalf of the other members of the Sue and Labor Breach Class.

124.    Plaintiff's CIC policy and the CIC policies of other Sue and Labor Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Sue and Labor Declaratory Judgment Class members' reasonably incurred expenses to protect Covered Property.

125.    In the Building and Personal Property Coverage Form and Business Income (And Extra Expense) Coverage Form, CIC agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

126.    In complying with the orders issued by civil authorities responding to the COVID-19 pandemic and otherwise suspending or limiting operations, Plaintiffs and other members of the Sue and Labor Breach Class incurred expenses in connection with reasonable steps to protect Covered Property.

127.    Plaintiff and the other Sue and Labor Declaratory Judgment Class members have complied with all applicable provisions of the policies and yet CIC failed and refused to provide coverage as the policies require.  Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations.

128.    By denying coverage for any Sue and Labor expenses incurred by Plaintiff and  the other members of the Sue and Labor Breach Class in connection with the Closure Orders and  the COVID-19 pandemic, CIC  has breached its coverage obligations under the policies.

129.    As a result of CIC's breaches of the policies, Plaintiff and the other members of the Sue and Labor Breach Class have sustained substantial damages for which CIC is liable, in an amount to be proven at trial.

### COUNT IX – Declaratory Judgment – Business Income from Dependent Properties Coverage  (Brought on behalf of the Business Income from Dependent Properties Declaratory Judgment Class)

130.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

131.    Plaintiff brings this Count individually and on behalf of the other members of the  Business Income from Dependent Properties Declaratory Judgment Class.

132.    Plaintiff's CIC policy and the CIC policies of other Business Income from Dependent Properties Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members' losses for claims covered by the policy.

133.    Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members have complied with all applicable provisions of the policies and yet CIC failed and refused to provide coverage as the policies require. Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations, such that the Court can render declaratory judgment regardless of whether particular members of the class have filed a claim.

134.    An actual case or controversy exists regarding Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members' rights and CIC's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiffs and the other Business Income from Dependent Properties Declaratory Judgment Class members in connection with the suspension and interruption of their businesses arising from the COVID-19 pandemic at dependent properties and the orders issued by civil authorities responding to the pandemic.

135.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

a.    The Business Income losses that Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members suffered as a result of their businesses being suspended and interrupted by the COVID-19 pandemic at dependent properties and the orders issued by civil authorities responding to the pandemic are insured losses under their policies; and

b.    CIC is obligated to pay Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the orders issues by civil authorities during the period of restoration and the necessary interruption of their businesses arising from the COVID-19 pandemic at dependent properties.

**COUNT X – Breach of Contract – Business Income from Dependent Properties Coverage (Brought on behalf of the Business Income from Dependent Properties Breach Class)**

136.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

137.   Plaintiff brings this Count individually and on behalf of the other members of the Business Income from Dependent Properties Breach Class.

138.   Plaintiff's CIC policy and the CIC policies of other Business Income from Dependent Properties  Declaratory Judgment Class members are contracts under which CIC was paid premiums  in exchange for its promise to pay Plaintiff and the other Business Income from Dependent Properties Declaratory  Judgment Class members' losses for claims covered by the policy.

139.   In the Building and Personal Property Coverage Form and Business Income (and  Extra Expense) from Dependent Properties Coverage Form, CIC agreed to pay for its insureds' actual loss of Business  Income sustained due to the necessary suspension of its operations during the "period of  restoration" caused by direct loss to "dependent property" caused by a covered cause of loss.

140.   A "slowdown or cessation" of business activities at the Covered Property is a  "suspension" under the policy, for which CIC agreed to pay for loss of Business Income  during the "period of restoration" that begins at the time of direct loss.

141.   "Business Income" means net income (net profit or loss before income taxes) that  would have been earned or incurred and continuing normal operating expenses sustained,  including payroll.

142.   "Dependent Property" means property operated by others whom the insured depends on to: a) deliver materials or services to the insured or to others for the insured's account, b) accept insured's products or services, c) manufacture products for delivery to insured's customers under contract of sale, or d) attract customers to the insured's business.

143.   COVID-19 caused direct physical loss of or damage to dependent property that caused suspension of operations at Plaintiff and the other  Business Income from Dependent Properties Breach Class members' Covered Properties. Losses caused by COVID-19 thus triggered the Business Income from Dependent Properties provision of Plaintiff and the other Business Income from Dependent Properties Breach Class members' CIC policies.

144.   Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members  have complied with all applicable provisions of the policies and yet CIC failed and refused to provide coverage as the policies require.  Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations, such that the Court can render declaratory judgment regardless of whether particular members of the class have filed a claim.

145.   By denying coverage for any Business Income losses incurred by Plaintiff and  the other Business Income from Dependent Properties Breach Class

members in connection with the COVID-19 pandemic, CIC has breached its coverage obligations under the policies.

146. As a result of CIC's breaches of the policies, Plaintiff and the other Business Income from Dependent Properties Breach Class members have sustained substantial damages for which CIC is liable, in an amount to be proven at trial.

### COUNT XI – Declaratory Judgment – Extra Expense from Dependent Properties Coverage (Brought on behalf of the Extra Expense from Dependent Properties Declaratory Judgment Class)

147. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

148. Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense from Dependent Properties Declaratory Judgment Class.

149. Plaintiff's CIC policy and the CIC policies of other Extra Expense from Dependent Properties Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense from Dependent Properties Declaratory Judgment Class members' losses for claims covered by the policy.

150. Plaintiff and the other Extra Expense from Dependent Properties Declaratory Judgment Class members have complied with all applicable

provisions of the policies and yet CIC failed and refused to provide coverage as the policies require. Instead, on information and belief, CIC made the corporate-level business decision to uniformly deny claims related to COVID-19 without individual bases or investigations, such that the Court can render declaratory judgment regardless of whether particular members of the class have filed a claim.

151.    An actual case or controversy exists regarding Plaintiff and the other Extra Expense from Dependent Properties Declaratory Judgment Class members' rights and CIC's obligations under the policies to reimburse Plaintiff and the other Extra Expense from Dependent Properties Declaratory Judgment Class members for the full amount of Extra Expense losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

152.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

    a.    The Extra Expenses losses that Plaintiff and the other Extra Expense from Dependent Properties Declaratory Judgment Class members suffered as a result of their businesses being suspended and interrupted by the COVID-19 pandemic and the orders issued by civil

authorities responding to the pandemic are insured losses under their policies; and

b.   CIC is obligated to pay Plaintiff and the other Extra Expense from Dependent Properties Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the orders issues by civil authorities during the period of restoration and the necessary interruption of their businesses arising from the COVID-19 pandemic.

### COUNT IV – Breach of Contract – Extra Expense from Dependent Properties Coverage (Brought on behalf of the Extra Expense Breach Class)

153.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

154.   Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense from Dependent Properties Breach Class.

155.   Plaintiff's CIC policy and the CIC policies of other Extra Expense from Dependent Properties Declaratory Judgment Class members are contracts under which CIC was paid premiums in exchange for its promise to pay Plaintiff and the other Extra Expense from Dependent Properties Breach Class members' losses for claims covered by the policy.

156.    In the Building and Personal Property Coverage Form and Business Income (And  Extra Expense) from Dependent Properties Coverage Form, CIC also agreed to pay necessary Extra Expense that its  insureds incur during the "period of restoration" that the insureds would not have sustained if  there had been no direct loss to property of a dependent property caused by or resulting from a Covered Cause of Loss.

157.    "Extra Expense" includes expenses to avoid or minimize the suspension of  business, continue operations, and to repair or replace property.

158.    "Dependent Property" means property operated by others whom the insured depends on to: a) deliver materials or services to the insured or to others for the insured's account, b) accept insured's products or services, c) manufacture products for delivery to insured's customers under contract of sale, or d) attract customers to the insured's business.

159.    Due to the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic, Plaintiff and the other members of the  Extra Expense from Dependent Properties Breach Class incurred Extra Expense at Covered Property.

160.    By denying coverage for any business losses incurred by Plaintiff and the other  members of the Extra Expense from Dependent Properties Breach Class in connection with the COVID-19 pandemic and the orders issued by civil authorities

responding to the pandemic, CIC has breached its coverage obligations under the policies.

161.   As a result of CIC's breaches of the policies, Plaintiff and the other members of the Extra Expense from Dependent Properties Breach Class have sustained substantial damages for which CIC is liable, in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the putative classes as defined herein and in any future, respectfully request that the Court enter judgment in their favor and against CIC as follows:

a.    Entering an Order certifying the proposed nationwide classes as defined herein,  designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.    Entering judgment in favor of Plaintiff and the members of the Business Income Breach Class, the Civil Authority Breach Class, the Extra Expense Breach Class, the Sue and Labor Breach Class, the Business Income from Dependent Properties Breach Class, and the Extra Expense from Dependent Properties Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.    Entering declaratory judgments in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority

Declaratory Judgment Class, the Extra Expense Declaratory Judgment Class, the Sue and Labor Declaratory Judgment Class; the Business Income from Dependent Properties Declaratory Judgment Class, and the Extra Expense from Dependent Properties Declaratory Judgment Class as follows:

1.  The Business Income, Civil Authority, Extra Expense, Sue and Labor, Business Income from Dependent Properties, and Extra Expense from Dependent Properties had losses incurred in connection with the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic are insured losses under their policies; and

2.  CIC is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, Sue and Labor, Business Income from Dependent Properties, and Extra Expense from Dependent Properties losses incurred and to be incurred related to the COVID-19 pandemic and the orders issued by civil authorities responding to the pandemic;

d.  Ordering CIC to pay pre- and post-judgment interest on any amounts awarded;

e.  Ordering CIC to pay attorneys' fees and costs of suit; and

f.     Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all matters so triable.

Respectfully submitted,
**HUBBARD SNITCHLER & PARZIANELLO PLC**

*/s/ John A. Hubbard*
John A. Hubbard (P39624)
Eric A. Parzianello (P42797)
Attorneys for Plaintiff
801 W. Ann Arbor Trail, Suite 240
Plymouth, MI 48170
(313) 672-7300
jhubbard@hspplc.com
eparzianello@hspplc.com

**BARTLE & MARCUS LLC**
Matthew V. Bartle Mo. Bar # 40903
David L. Marcus, Mo. Bar #47846
116 W. 47th Street, Suite 200
Kansas City, Missouri 64112
(816) 256-4614 (telephone)
(816) 222-0534 (facsimile)
mbartle@bmlawkc.com
dmarcus@bmlawkc.com

M. Blake Heath, Mo. Bar # 61939
917 W. 43rsd Street, Suite 100
Kansas City, Missouri 64111
(816) 931-0048 (telephone)
(816) 931-4803 (facsimile)

Dated: April 30, 2020