UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ST. JULIAN WINE CO., INC.,

    Plaintiff,

v.

THE CINCINNATI INSURANCE
COMPANY,

    Defendant.
_____/

Case No. 1:20-cv-374

Hon. Hala Y. Jarbou

## OPINION

This case is one of many filed by businesses across the country who seek recovery from their property insurers for losses sustained as a result of the COVID-19[1] pandemic and associated government restrictions. Courts are nearly unanimous in their agreement that such claims have no merit. An insurance policy like the one here, which insures against "physical loss" and "physical damage," does not cover economic losses stemming from the pandemic. Accordingly, the Court will grant Defendant's motion to dismiss the complaint.

### I. BACKGROUND

Plaintiff St. Julian Wine Company, Inc. is a winery and distillery that produces wine for sale online and at several retail locations in Michigan. One location has a full-service restaurant. Also, St. Julian typically hosts private events at various times throughout the year.

Defendant The Cincinnati Insurance Company ("CIC") is an insurance company located in Ohio. It issued St. Julian a policy that insured it against losses arising from property damage and business interruptions of various kinds. (*See generally* Policy, ECF No. 7-1.)

---

[1] COVID-19 is the name of the disease caused by the novel coronavirus identified in 2019.  *See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

Beginning in March 2020, the Governor of Michigan responded to the growing pandemic by issuing executive orders requiring most Michigan residents to stay at home except in certain circumstances. Over time, the Governor allowed some businesses to reopen subject to occupancy restrictions and social distancing rules. Not surprisingly, St. Julian's business suffered as a result of these orders. It alleges that the orders denied it the use of its property and required it to suspend or curtail its operations.

Under the Policy, CIC agreed to pay for "direct 'loss' to [St. Julian's] Covered Property at the 'premises'[2] caused by or resulting from any Covered Cause of Loss." (*Id.*, PageID.555.) The Policy defines "loss" as "accidental physical loss or accidental physical damage." (*Id.*, PageID.590.) The definition of "Covered Cause of Loss" incorporates the definition of "loss." A Covered Cause of Loss is a "direct 'loss'" unless excluded by the Policy. (*Id.*, PageID.557.) All claims must satisfy this definition of loss to obtain coverage under the Policy. In other words, all claims require some form of *physical* loss or *physical* damage.

For instance, CIC agreed to pay for loss of business income sustained by St. Julian due to the suspension of its operations, where that suspension was "caused by direct *'loss'* to property at a 'premises' caused by or resulting from any *Covered Cause of Loss*." (*Id.*, PageID.570 (emphasis added).) Thus, to obtain coverage for a suspension of its operations, St. Julian had to show that the suspension resulted from physical loss or physical damage to its property.

The Policy also covered income losses and expenses sustained by St. Julian due to an action by a "civil authority that prohibited access" to St. Julian's premises. (*Id.*, PageID.571.) St. Julian argues that the Governor's orders effectively prohibited access to its property. Even accepting that

---

[2] "Premises" means specific locations and buildings identified in declarations attached to the Policy. (Policy, PageID.591.)

2

argument, however, coverage arises only when (1) property other than that covered by the Policy is "*damaged*" by a Covered Cause of Loss, (2) the civil authority prohibits "access to the area immediately surrounding the *damaged property*," and (3) the civil authority's prohibition is in response to "*dangerous physical conditions* resulting from the damage," to the "continuation of the *Covered Cause of Loss*," or to enable the civil authority to have "unimpeded access to the *damaged property*." (*Id.* (emphasis added).) In other words, physical property damage is necessary to trigger coverage for access restrictions imposed by a government.

When St. Julian submitted a claim to CIC for its lost income and expenses, CIC denied the claim. This lawsuit followed. Before the Court is CIC's motion to dismiss for failure to state a claim, as well as several motions notifying the Court of additional authority in support of its argument that St. Julian has not alleged a loss that would be covered by the Policy.

## II. STANDARD

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

In this case, the Court can consider the content of the Policy because St. Julian has attached it to its amended complaint.

### III. ANALYSIS

The Court must construe the Policy "in the same manner as any other species of contract, giving its terms their 'ordinary and plain meaning if such would be apparent to a reader of the instrument.'" *DeFrain v. State Farm Mut. Auto. Ins. Co.*, 817 N.W.2d 504, 509 (Mich. 2012) (quoting *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003)). When the meaning of language in a contract is disputed, the Court must determine whether that language is ambiguous or not. *Mayer v. Auto-Owners Ins. Co.*, 338 N.W.2d 407, 409 (Mich. Ct. App. 1983). Contractual language is ambiguous "only if it is equally susceptible to more than a single meaning." *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 892 N.W.2d 794, 798 (Mich. 2017). Where ambiguity exists, "factual development is necessary to determine the intent of the parties." *Petovello v. Murray*, 362 N.W.2d 857, 858 (Mich. Ct. App. 1984). Where the meaning is unambiguous, the Court must enforce the contract as written without consideration of extrinsic evidence. *Upjohn Co. v. N.H. Ins. Co.*, 476 N.W.2d 392, 398 n.6 (Mich. 1991).

4

Provisions in insurance contracts limiting the scope of coverage are valid "as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Trierweiler v. Frankenmuth Mut. Ins. Co.*, 550 N.W.2d 577, 579 (Mich. Ct. App. 1996) (citing *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502 (Mich. 1995)). "An insurance company should not be held liable for a risk it did not assume." *Id.* (citing *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431 (Mich. 1992)). Exclusionary clauses are "strictly construed in favor of the insured," but "coverage under a policy is lost if any exclusion in the policy applies to an insured's particular claim." *Id.*

The insured bears the burden of proving that the policy covers the claimed losses. *Williams v. Detroit Fire & Marine Ins. Co.*, 27 N.W. 452, 453 (Mich. 1937). The insurer, on the other hand, carries the burden of proving that a policy exclusion precludes coverage of an otherwise covered loss. *Heniser*, 534 N.W.2d at 505 n.6.

Here, the complaint makes clear that St. Julian cannot meet its burden of proving that the Policy covers its losses. As indicated above, the Policy covers losses stemming from "accidental physical loss or accidental physical damage." St. Julian suffered losses due to the presence of a contagious virus in the community. The Governor's orders aimed to reduce the spread of that virus by minimizing person-to-person contact. That virus, and those orders, had no connection to the physical condition of St. Julian's property, or to any physical damage or loss.

Put another way, there is no reasonable construction of "physical loss" or "physical damage" that encompasses the presence of a contagious virus in the general population. In ordinary usage, "physical" means something tangible and material. Applying Michigan law, the Court of Appeals for the Sixth Circuit has interpreted the phrase "physical loss or damage" in an insurance policy to mean "tangible damage" to property. *See Universal Image Prods., Inc. v. Fed.*

*Ins. Co.*, 475 F. App'x 569, 575 (6th Cir. 2012); *accord Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-CV-2211-JAR-GEB, 2020 WL 7078735, at *5 (D. Kan. Dec. 3, 2020) (noting that "'physical damage' in an insurance policy is widely accepted to mean 'physical alteration'" and that "physical loss requires some sort of actual change in the insured property"). Consequently, in *Universal Image*, the insured's cost of remediating mold and bacterial contamination in its building did not qualify for coverage because no "physical property was lost or destroyed"; the contamination did not impact the physical structure of any tangible property. *Id.* at 572-73. Even the more expansive definition of physical loss or damage suggested by the plaintiff—wherein physical loss occurs when a building is rendered "uninhabitable" or "substantially unusable"—did not apply because the insured was able to remain in the building during remediation. *Id.* at 574. For similar reasons, St. Julian has not alleged a tangible, physical loss or damage. The coronavirus has not physically altered any property, and St. Julian does not plausibly allege that its property became unusable. Thus, St. Julian did not suffer a "loss" as defined by the Policy.

Other courts that have examined *identical* language in the same context have reached the same conclusion. *See, e.g.*, *B Street Grill & Bar LLC v. Cincinnati Ins. Co.*, No. CV-20-01326-PHX-SMB, 2021 WL 857361, at *5 (D. Ariz. Mar. 8, 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ, 2020 WL 5820552, at *1 (S.D. Iowa Sept. 29, 2020); *Promotional Headwear*, 2020 WL 7078735, at *9; *4431, Inc. v. Cincinnati Ins. Cos.*, No. 5:20-cv-04396, 2020 WL 7075318, at *12 (E.D. Pa. Dec. 3, 2020); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948, at *5 (S.D. W. Va. Nov. 2, 2020); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 1:20-cv-02248-JPB, 2021 WL 778728, at *6 (N.D. Ga. Mar. 1, 2021); *T & E Chicago LLC v. Cincinnati Ins. Co.*, No. 20 C 4001,

2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020); *Bend Hotel Dev. Co. v. Cincinnati Ins. Co.*, No. 20 C 4636, 2021 WL 271294, at *3 (N.D. Ill. Jan. 27, 2021); *Webb Dental Assocs. v. Cincinnati Indemnity Co.*, No. 1:20-cv-250-AW-GRJ, 2021 WL 800113, at *2 (N.D. Fla. Jan. 15, 2021). *But see Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, No. 20 C 2806, 2021 WL 767617, at *4 (N.D. Ill. Feb. 28, 2021) (concluding that the term "loss" is ambiguous in CIC's policy). And many other courts have concluded that business losses sustained as a result of the pandemic and related government restrictions are not covered by insurance policies containing *similar* language requiring physical loss or damage.[3]

St. Julian cites *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), but that case is distinguishable. There, the court acknowledged case law supporting CIC's position that physical, tangible alteration is required to show a physical loss. *See id.* at 801. However, the court determined that a physical loss could occur "absent a physical alteration" when the "property is uninhabitable or unusable for its intended purpose" due to dangerous conditions on the property, such as the presence of asbestos. *Id.* The court concluded that the plaintiff had alleged an analogous situation because the complaint stated that the virus which causes COVID-19 was "likely on [the plaintiff's] property and caused [the plaintiff] to cease or suspend operations." *Id.* at 802.

Unlike the plaintiff in *Studio 417*, St. Julian does not allege that the virus was present on its property. Nor does it plausibly allege that the virus or the Governor's orders rendered its property substantially unusable. To the contrary, St. Julian alleges that it has been able to continue business by "sell[ing] its wines online and . . . offer[ing] customers curbside pickup[.]" (Am.

---

[3] CIC has identified many such cases in its briefs and its motions for leave to submit supplemental authority. (*See* ECF Nos. 18-20.)

7

Compl. ¶ 2, ECF No. 7.)[4]  Thus, the rationale in *Studio 417* does not apply.  Moreover, even that court expressed some hesitation about its ruling, stating that "[s]ubsequent case law in the COVID-19 context, construing similar insurance provisions, and under similar facts, may be persuasive." *Studio 417*, 478 F. Supp. 3d at 805.  For the most part, subsequent case law has not supported its decision.

St. Julian also points to the lack of a "virus exclusion" in the Policy, but before any exclusions become relevant, St. Julian must allege facts from which to infer coverage; it must allege some sort of physical loss or damage.  It has not done so.  Thus, it does not matter what exclusions are or are not present in the Policy.  St. Julian asserts that the lack of such an exclusion is relevant for interpreting the Policy as a whole, but the Court looks at the Policy to interpret the Policy.  A non-existent provision does not alter the unambiguous language of the Policy.

In short, for the reasons stated herein and by the many other courts dismissing similar claims, St. Julian fails to state a claim for coverage.  Accordingly, the Court will grant CIC's motions for leave to submit supplemental authority as well as its motion to dismiss.

An order and judgment will enter consistent with this Opinion.


Dated:   March 19, 2021                              /s/ Hala Y. Jarbou
                                                     HALA Y. JARBOU
                                                     UNITED STATES DISTRICT JUDGE

---

[4] To be sure, one of the Governor's orders closed restaurants and other places of public accommodation to "ingress, egress, use, and occupancy by members of the public." Executive Order 2020-9, https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521789--,00.html.  However, that order did not prohibit access due to "dangerous physical conditions" resulting from damage to property.  (*See* Policy, PageID.571.) Indeed, the order expressly allowed access by St. Julian's employees.  It also encouraged establishments like St. Julian to "offer food and beverage using delivery service, window service, walk-up service, drive-through service, or drive-up service[.]"  Executive Order 2020-9.  And that's what St. Julian did.  Thus, the order did not render St. Julian's property unusable for business.